

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

EUWYN POON,                              :
                                         :
                           Plaintiff,    :     09 Civ. 3224 (RMB)
                                         :
       - against -                       :     <u>**DECISION & ORDER**</u>
                                         :
ROOMORAMA, LLC, FEDERICO FOLCIA,         :
JIA EN TEO, DAVID NGO, and               :
UPTHOUGHT, INC.,                         :
                                         :
                           Defendants.   :
-------------------------------------------------------X

## I.   Introduction

On June 25, 2009, Plaintiff Euwyn Poon ("Plaintiff" or "Poon") filed a First

Amended Complaint ("FAC" or "Complaint") against Roomorama, LLC ("Roomorama" or

"Company"), Federico Folcia ("Folcia"), Jia En Teo ("Teo"), David Ngo ("Ngo"), and

Upthought, Inc. ("Upthought") (collectively, "Defendants"), alleging copyright infringement

under 17 U.S.C. § 106 and state common law claims of misappropriation of trade secrets,

promissory fraud, breach of contract, breach of implied-in-fact contract, breach of implied

covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent inducement,

fraud, quantum meruit, unjust enrichment, and civil conspiracy. (FAC ¶¶ 120–222.)[1]

On July 10, 2009, Roomorama, Folcia, Teo (collectively, the "Roomorama

Defendants") and Ngo (with the Roomorama Defendants, "Movants") filed a partial motion

to dismiss pursuant to Rule 12(b)(6) Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

arguing, among other things, that:  (1) Movants did not owe Poon a fiduciary duty because

---

[1]    Plaintiff has withdrawn his claim of civil conspiracy. (<u>See</u> Opp'n at 1 ("Defendants
move to dismiss, <u>inter alia</u>, Poon's claim for Civil Conspiracy. Plaintiff concedes this claim,
Count 12.").)

"the parties never became partners or joint venturers"; and (2) the Court should dismiss

Poon's claims for promissory fraud, fraudulent inducement and fraud (collectively, "fraud

claims") because they are "reformulation[s] of his breach of contract claim."[2] (Mem. of Law

in Supp. of Defs.' Partial Mot. to Dismiss, dated July 10, 2009 ("Mot."), at 7, 9, 18, 22.)

On July 24, 2009, Plaintiff filed an opposition, arguing, among other things, that: (1)

Defenants owed him a fiduciary duty because "Poon has alleged more than enough to

establish that a partnership, or at the very least a joint venture, was consummated between

Poon and Defendants"; and (2) "Poon's fraud claim[s] [are] based on allegations separate

from his breach of contract claims." (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss and

in Supp. of Pl.'s Mot. for Prelim. Inj., dated July 24, 2009 ("Opp'n"), at 13, 15, 17.) Also on

that date, Plaintiff cross-moved preliminarily to enjoin "Defendants from using the [computer

code allegedly developed by Plaintiff and] releasing its copyrighted code." (Opp'n at. 17.)

Plaintiff seeks this relief based on Defendants' alleged copyright infringement,

misappropriation of trade secrets, breach of contract, breach of implied-in-fact contract and

breach of implied covenant of good faith and fair dealing. (Opp'n at 19–25.)

On August 7, 2009, Defendants submitted memorandum in further support of their

motion to dismiss and in opposition to Plaintiff's motion for a preliminary injunction,

arguing, among other things, that "Poon has lost any presumption of irreparable harm"

because "he waited until May 6, 2009 to seek a preliminary injunction, seven months after he

claims to have learned of Defendants' alleged theft and distribution of his code." (Reply

Mem. in Further Supp. of Defs.' Partial Mot. to Dismiss and Opp'n to Pl.'s Mot for Prelim.

_____

[2]    Defendant Upthought did not join the Movants' motion to dismiss. (See Answer to
FAC, dated Sept. 21, 2009 [#24].)

2

Inj., dated Aug. 7, 2009 ("Defs. Reply"), at 5–6.) On August 14, 2009, Plaintiff submitted a reply ("Pl. Reply") in further support of his motion for a preliminary injunction. The parties waived oral argument.

## II.    Background

For the purposes of this motion, the allegations of the Complaint are taken as true, "except when they are inconsistent with the documentary record." Germenis v. N.Y.S. Dep't of Corr. Servs., No. 08 Civ. 8968, 2009 WL 2877646, at *2 n.1 (S.D.N.Y. Sept. 9, 2009); see also Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 109 (2d Cir. 2003).

On or about May 27, 2008, Plaintiff, who is currently employed as an attorney and is "also a skilled computer programmer," emailed Roomorama's founders Teo and Folcia regarding Roomorama.com, a "short term room rental website." (FAC ¶¶ 4, 29, 31 & Ex. B.) At a meeting on May 28, 2008, "Teo and Folcia sa[id] they want[ed] Poon's help as [a] computer programmer," and, on the following day, "Poon and the Roomorama Defendants entered into a Confidentiality Agreement." (FAC Ex. B.) On or about June 7, 2008, "Poon and the Roomorama Defendants decided that Poon should develop his own original code for a new website from scratch . . . ('the Poon Platform')," which Plaintiff began working on "immediately while negotiating with the Roomorama Defendants over the details of a proper LLC agreement under which the group would work together." (FAC ¶¶ 3–6.) On June 30, 2008, "Poon expresse[d] concern to Teo and Folcia over the phone that his [intellectual property] was not being properly valued in their offer," but stated that "he [would] keep working on the site in good faith until they work[ed] out an agreement." (FAC Ex. B.)

Plaintiff and the Roomorama Defendants were unable to agree on the terms of the LLC agreement, and, on October 26, 2008, "Poon suggested that the Roomorama Defendants

3

pay him $100,000." (FAC ¶¶ 7–10.)  The next day, "Poon received a phone call from Defendant Folcia, telling him that any further negotiations would be done through the Roomorama Defendants' attorney." (FAC ¶ 12.)  "That same day Poon discovered that the Roomorama Defendants posted a job request for a freelance programmer . . . and changed the passwords on the Roomorama.com server," thereby preventing Plaintiff from continuing to work on the Poon Platform.  (FAC ¶¶ 13–14.)

On October 29, 2008, "Poon filed a copyright for the Poon Platform," presumably with the U.S. Copyright Office of the Library of Congress.  (FAC ¶ 15.)

"On November 11, 2008, Poon discovered that Folcia and Teo had hired Ngo, another computer programmer, to create unauthorized copies of the Poon Platform" and later discovered "that the Roomorama Defendants had hired a web development company – Upthought – to develop [a new] Roomorama website by building directly upon and cloning the Poon Platform." (FAC ¶¶ 88, 90.)

"In an attempt to settle this matter amicably, Poon hired an attorney . . . to negotiate with [the Roomorama Defendants'] attorney." (FAC ¶ 91.)  These negotiations apparently ceased on December 8, 2008 when the Roomorama Defendants' attorney "denied all allegations and informed [Plaintiff's attorney] that Poon's code was 'valueless'" and that the Roomorama Defendants "have not and do not intend to 'reverse engineer' any code [Plaintiff] produced or stole, as the case may be.  The site is being completely rebuilt through a reputable firm." (FAC ¶ 101, Ex. W, Ex. B ("January 5, 2009:  Defendants launched Roomorama.com, version 2.0.").)

**For the reasons set forth below, the Movants' motion to partially dismiss the Complaint is granted and Plaintiff's motion for a preliminary injunction is denied.**

## III.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." South Cherry Street, LLC v. Hennessee Group LLC,  573 F.3d 98, 110 (2d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).  The Court's "review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint." Ariel (UK) Ltd. v. Reuters Group, PLC, 277 F. App'x. 43, 46 (2d Cir. 2008).

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990) (citations omitted).  "A party seeking a preliminary injunction in this Circuit must show:  (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002).  A "prima facie case of copyright infringement gives rise to a presumption of irreparable harm." Id.  However, "any such presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief." Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995).

IV.   **Analysis**

   **A. Motion to Dismiss**

   **(1)      Fiduciary Duty**

Movants argue, among other things, that Defendants did not owe Poon a fiduciary

obligation because "Poon's [C]omplaint concedes – in fact is premised on – the notion that

the parties' joint venture was never consummated." (Mot. at 19.)  Plaintiff counters, among

other things, that Defendants breached a fiduciary duty owed to Plaintiff because they were

partners or joint venturers.  (See Opp'n at 16.)

"The Court fully recognizes that the existence of a fiduciary relationship normally

depends on the facts of a particular relationship, [and] therefore a claim alleging the

existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6).

However, the Court is not required to credit mere legal conclusions that are dressed up as

factual allegations that a defendant was in a fiduciary relationship with a plaintiff." World

Wrestling Entm't, Inc. v. Jakks Pacific, Inc., 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007)

(internal citation and quotations omitted).  "[I]n order to survive a motion to dismiss a claim

for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged

relationship with sufficient particularity to enable the court to determine whether, if true,

such facts could give rise to a fiduciary relationship." Id. (citation omitted).  "[A] fiduciary

relationship may arise [i] where the parties to a contract specifically agree to such a

relationship, or [ii] if one party's superior position or superior access to confidential

information is so great as virtually to require the other party to repose trust and confidence in

the first party." Pension Comm., 592 F. Supp. 2d at 624 (quotations and footnote omitted).

With respect to a fiduciary duty arising from a contractual agreement, "being a party to a

contract does not itself impose a fiduciary duty. Rather, this duty must arise from 'a position

of trust or special confidence . . . that impose[s] obligations beyond the express agreements'

between the parties." Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03

Civ. 1537, 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003) (quoting

Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

"A cause of action for breach of fiduciary duty which is merely duplicative of a breach of

contract claim cannot stand." Id. (quoting William Kaufman Org., Ltd. v. Graham & James,

LLP, 703 N.Y.S.2d 439, 442 (1st Dep't 2000)). With respect to a fiduciary duty created by

one party's trust and confidence in another party, "the requisite high degree of dominance

and reliance must have existed prior to the transaction giving rise to the alleged wrong, and

not as a result of it[.]" Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes

v. Salomon Bros. Int'l Ltd., 674 N.Y.S.2d 648, 649 (1st Dep't 1998).

Plaintiff does not allege that Defendants entered into a written contract wherein the

parties specifically agreed to a fiduciary relationship. As Plaintiff acknowledges, no contract

between him and Defendants setting forth such a relationship was ever signed. (See FAC ¶

67 ("Poon never signed the LLC [Agreement]") Plaintiff nevertheless argues that the (failed)

negotiations between him and the Roomorama Defendants constitute "a mutual

understanding that a joint business relationship existed or was in the process of creation."

(FAC ¶ 181.) The Court is not persuaded because "[m]ere . . . negotiations, which never

even came to fruition, can hardly be the basis of a fiduciary relationship." Musalli Factory

for Gold & Jewelry v. JPMorgan Chase Bank, N.A., – F.R.D. – , No. 08 Civ. 1720, 2009 WL

860635, at *12 (S.D.N.Y. Mar. 31, 2009); see Seven Star Shoe Co. v. Strictly Goodies, Inc.,

657 F. Supp. 917, 920 (S.D.N.Y. 1987) ("Unsurprisingly, [plaintiff] has submitted no

authority for the proposition that a brief, failed, arm[']s-length negotiation between two parties creates a long-lasting 'fiduciary relationship' between them.  Quite the contrary, such a momentary brush in the marketplace is the virtual antithesis of a fiduciary relationship . . . .").[3]

Even assuming, arguendo, that some form of "joint business relationship" arose during Plaintiff and Defendants' negotiations, a fiduciary relationship did not arise where the alleged "joint business relationship" did not possess the necessary elements for the creation of a joint venture or partnership.  See Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 67–68 (2d Cir. 2003) ("A joint venture pursuant to New York law requires five elements:  (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses.") (citation omitted); see also Scholastic, Inc. v. Harris, 259 F.3d 73, 84 (2d Cir. 2001) ("Under New York law joint ventures are governed by the same legal rules as partnerships.").  Plaintiff, who himself is a corporate attorney by training, "began working on the Poon Platform immediately while negotiating with the Roomorama Defendants over the details of a proper LLC Agreement under which the group would work together." (FAC ¶ 6.)  The negotiations broke down before the elements necessary for the creation of a joint venture or partnership – such as a provision for the sharing of both profits and losses – were

_____

[3]     As in Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 244 n.5 (S.D.N.Y. 2006), the Defendants did not owe Plaintiff a duty arising from a fiduciary or confidential relationship at the time Defendants negotiated a joint venture agreement because "the Complaint does not allege that Defendants had a fiduciary or confidential relationship with Plaintiff[] prior to the formation of the . . . [a]greement."

ever put in place.  (See FAC ¶¶ 9–10); see Itel Containers Int'l Corp. v. Atlanttrafik Exp.
Serv. Ltd., 909 F.2d 698, 701 (2d Cir. 1990); see also Steinbeck v. Gerosa, 4 N.Y.2d 302,
317 (1958) ("An indispensable essential of a contract of partnership or joint venture . . . is a
mutual promise or undertaking of the parties to share in the profits of the business and submit
to the burden of making good the losses.").  The percentage of Plaintiff's equity in
Roomorama during each of the first five years of the proposed business venture and
Plaintiff's share of profits changed even during the course of Plaintiff's negotiations with the
Roomorama Defendants.  (See e.g., FAC ¶ 66 ("[T]he Roomorama Defendants inserted a
definition for 'Deemed Capital Contribution' [that] reflected a schedule in which Poon's
equity stake would start at 0% in Year 1 and go up to 25% in Year 5.  This was not
something that Poon had ever agreed to with Defendants.")  And, Plaintiff does not appear to
have committed to the sharing of any losses.  (See FAC Ex. D (E-mail from Poon to Folcia
and Teo (June 18, 2008, 23:24 EST) ("Sure I could put in some capital to even things out a
little, but I just don't see any costs other than food and electricity to get this puppy up and
running . . . .")  Indeed, the parties' inability to agree on the sharing of both profits and
losses appears to have brought the negotiations to a halt.  (See FAC ¶¶ 9 ("[O]n October 24,
2008, the Roomorama Defendants changed their story and now told Poon that he would
receive the 25% [ownership interest in Roomorama] over the course of five years, and such
equity distribution was subject to annual approval by Teo and Folcia."), 10 ("Frustrated with
the Roomorama Defendants' deceit . . . Poon suggested that the Roomorama Defendants pay
him $100,000.").)

And, Plaintiff does not allege that a fiduciary relationship existed apart from the
proposed business venture.  That is, he does not allege that he had a prior relationship with

any of the Roomorama Defendants or that the Roomorama Defendants held a "superior position or superior access to confidential information so great as virtually to require [Plaintiff] to repose trust and confidence in [them]."[4] Pension Comm., 592 F. Supp. 2d at 624; see Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co., 785 F. Supp. 411, 426 (S.D.N.Y. 1992) ("[W]here parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.").

**(2)   Fraud Claims**

Movants argue, among other things, that Plaintiff's fraud claims fail as a matter of law because "Poon merely re-styles his contract claim as multiple fraud claims by alleging that Roomorama Defendants never intended to perform their obligations." (Mot. at 11.) Plaintiff counters, among other things, that "Poon's contract claims revolve around Poon and Defendants agreeing to start a business partnership [whereas] the fraud-based claims concern, primarily, Poon being deceived into continuing his work on the Poon Platform." (Opp'n at 13.)

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389–90 (1987). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the

---

[4]     The exhibits attached to the Complaint reveal that Plaintiff attempted to engage the Roomorama Defendants by virtue of his own knowledge and experience as a corporate attorney. (See, e.g., FAC Ex. F (E-mail from Poon to Folcia and Teo (June 30, 2008, 14:35 EST)) (explaining to the Roomorama Defendants how negotiations customarily proceed in Plaintiff's dealings with "more experienced attorneys")).

contract." Id.; see also Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.") (internal quotations and citations omitted).

Plaintiff's fraud claims are dismissed because "none of [Plaintiff's fraud] allegations are distinct from those giving rise to the breach of contract claim [or] relate to facts collateral and extraneous to the contract." Metro. Transp. Auth. v. Triumph Adver. Prod., 497 N.Y.S.2d 673, 675 (1st Dep't 1986). Plaintiff alleges that there was a "breach of implied-in-fact contract" because "Defendants acknowledged through explicit statements, conversations, and actions that Poon would be compensated either monetarily or with equity for his intellectual property, the Poon Platform." (FAC ¶ 163.) The same "statements, conversations, and actions" that allegedly gave rise to an implied-in-fact contract also underlie Plaintiff's claims that the Roomorama Defendants fraudulently "induced Plaintiff to do work believing that he would become a partner in the Roomorama Defendants' Company and be properly compensated for his intellectual property." (FAC ¶ 19.) "[S]imply dressing up a breach of contract claim [as here] by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." Telecom Int'l Am., 280 F.3d at 196.

## B. Preliminary Injunction

Plaintiff argues that Defendants should be preliminarily enjoined "from using the Poon Platform [and] releasing its copyrighted code" because, among other reasons,

11

"Defendants clearly intend to hand over Poon's protected code to another programmer [which] would undoubtedly cause irreparable harm to Poon, who invested hundreds of hours in developing this unique platform." (Opp'n at 19.) Defendants counter, among other things, that "Poon waited until May 6, 2009 to seek a preliminary injunction, seven months after he claims to have learned of Defendants' alleged theft and distribution of his code." (Reply at 5; see also Letter from Craig Stuart Lanza to Hon. Richard M. Berman, dated May 6, 2009 [#3], at 1.)

"A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002). "When a plaintiff establishes a prima facie case of copyright infringement, irreparable harm is presumed. The presumption may be rebutted, if the defendant is able to demonstrate that the plaintiff delayed in bringing an action requesting preliminary injunctive relief." Feiner & Co. v. Turner Entm't Co., 98 F.3d 33, 34 (2d Cir. 1996).

There is no presumption of irreparable harm because Plaintiff has "failed to establish ownership of a valid copyright, an essential prerequisite for a prima facie case of copyright infringement." Rosenfeld v. W.B. Saunders, 728 F. Supp. 236, 247 (S.D.N.Y. 1990).[5]  A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright. Jorgensen, 351 F.3d at 51 (citing 17

---

[5]     "In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003).

U.S.C. § 410(c)).  Plaintiff has not submitted a certificate of registration.  Instead, Plaintiff

attaches to the Complaint a one page untitled printout that references a copyright but that

offers no indication as to whether a certificate of registration was issued and does not

describe the copyrighted work beyond "Computer File."  (FAC Ex. O); see Funrise Canada

(HK) Ltd. v. Zauder Bros., Inc., No. 99 Civ. 1519, 1999 WL 1021810, at *8 (E.D.N.Y. July

2, 1999) ("Preliminary injunctive relief is not warranted where a copyright claim is based

upon general, conclusory, and contested allegations of originality."); Novak v. Nat'l Broad.

Co., Inc., 716 F. Supp. 745, 750 (S.D.N.Y. 1989) ("the registration of the copyright . . . is an

absolute prerequisite to the institution of an infringement suit").

    Even assuming, arguendo, that Plaintiff had made a prima facie showing of copyright

infringement, Defendants have rebutted the presumption of irreparable harm by citing

Plaintiff's seven-month delay in seeking to preliminarily enjoin Defendants.  (Reply at 5.)

"Although delay may not negate the presumption of irreparable harm if the delay was caused

by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making

good faith efforts to investigate the alleged infringement, if it is not so explainable, delay

alone may justify denial of a preliminary injunction."  Tough Traveler, 60 F.3d at 968; see

also Feiner & Co., 98 F.3d at 35 ("[D]elay, [aside from] delay caused by ignorance of the

very existence of the infringing material, is suggestive of a lack of irreparable harm").  There

is no explanation for Plaintiff's delay.  Plaintiff learned about the alleged infringement as

early as October 2008, but did not seek to file a motion for a preliminary injunction until

May 6, 2009.  (Pl. Reply at 5; Letter from Craig Stuart Lanza to Hon. Richard M. Berman,

dated May 6, 2009 [#3], at 1.)  Plaintiff was still negotiating with Defendants' attorney

through the end of December 2008.  (Pl. Reply at 5.)  Plaintiff offers no explanation for the

five-month delay in moving for a preliminary injunction after negotiations ended in December 2008. See Weight Watchers Intern., Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); Ushodaya Entm't, Ltd. v. V.R.S. Int'l, Inc., No. 97 Civ. 1315, 1998 WL 224721, at *1 (S.D.N.Y. May 5, 1998) ("plaintiff waited nearly seven additional months . . . before bringing the motion for injunctive relief.")

"[B]ecause plaintiff has failed to establish a prima facie case of copyright infringement . . . the Court will not presume the existence of irreparable harm, but rather will apply the stringent rule applicable to the granting of a preliminary injunction in ordinary breach of contract cases." Harrison-Erickson, Inc. v. Chicago Bulls Ltd.. P'ship, No. 91 Civ. 1585, 1991 WL 51118, at *7 (S.D.N.Y. Apr. 3, 1991) (citing Video Trip Corp. v. Lightning Video, Inc., 866 F.2d 50, 52 (2d Cir. 1989)). Applying that rule, the Court finds that Plaintiff makes no showing of irreparable harm because he fails to demonstrate why monetary damages would not suffice. See id. ("[I]n order to be deemed 'irreparable,' so as to warrant the granting of injunctive relief, the harm alleged by the movant 'must be one requiring a remedy of more than mere monetary damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation.'") (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989)).

Plaintiff has helped establish the adequacy of monetary damages in attempting to resolve the dispute with an "all cash solution." (FAC Ex. L (E-mail from Poon to Folcia and Teo (Oct. 26, 2008, 12:16 EST)); see also FAC Ex. L ("Pretty simple proposition. $100k ('License Fee')"); Ex. R (Letter from Roman Fichman to Rosemarie Tully, dated Nov. 7,

2008) ("[Plaintiff] has authorized me to accept a settlement in the amount of $125,000 in exchange for an indefinite license."); Ex. V (Letter from Roman Fichman to Rosemarie Tully, dated Dec. 1, 2008) ("Demand is made for full compensation in the amount of no less than $109,700 by Friday 5 p.m.; December 5, 2008."); Ex. X (E-mail from Roman Fichman to Rosemarie Tully (Dec. 18, 2008, 15:33 EST)) ("Mr. Poon is willing to accept, in settlement, a payment of $54,500 and a 5.5% stake in the Roomorama in exchange for a mutual release of claims.").)

Accordingly, even if Plaintiff could demonstrate his likelihood of success on the merits – a question the Court does not reach – preliminary relief would be unwarranted. See Ushodaya Entm't, 1998 WL 224721, at *2.

## V.  Conclusion and Order

For the foregoing reasons, Movants' partial motion to dismiss [#8] is granted and Plaintiff's motion for a preliminary injunction [#11] is denied.

The parties are directed to appear at a status/settlement conference with the Court on January 4, 2010 at 10:00 a.m. in Courtroom 21B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York 10007. The conference scheduled for December 17, 2009 is vacated. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

**SO ORDERED.**

Dated: New York, New York
        November 10, 2009

_____
RICHARD M. BERMAN, U.S.D.J.