UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

EUWYN POON,                                          :

                      Plaintiff,         :

       - against -                             :

                                :

ROOMORAMA, LLC, FEDERICO FOLCIA,     :
JIA EN TEO, DAVID NGO, and                  :
UPTHOUGHT, INC.,                               :

                    Defendants.   :

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/4/10

09 Civ. 3224 (RMB) (FM)

**ORDER**

I.      **Introduction**

On June 25, 2009, Euwyn Poon ("Plaintiff" or "Poon") filed an Amended Complaint

("Complaint") against Roomorama, LLC ("Roomorama" or "Company"), its co-founders

Federico Folcia ("Folcia") and Jia En Teo ("Teo") (collectively, "Roomorama Defendants"),

and David Ngo, a computer programmer hired by the Roomorama Defendants ("Ngo")

(together with the Roomorama Defendants, "Defendants").[1]  (Compl. ¶¶ 23–28.)  Plaintiff

alleges, among other things, that he created a source code ("Poon Source Code") "for the

Roomorama Defendants' website . . . [b]ut the Roomorama Defendants . . . refused him the

partnership in their Company [that] they promised"; that the Roomorama Defendants

"violated their confidentiality agreement with Poon" by making the Poon Source Code

publicly available; and that the Defendants developed a source code ("Roomorama Source

Code") that "was virtually identical" to the Poon Source Code.  (Compl. ¶¶ 1–2, 107.)

Plaintiff asserts copyright infringement under 17 U.S.C. § 106 and a common law claim of

---

[1]      On January 8, 2010, Plaintiff voluntarily dismissed his claims against Upthought, Inc.
(See Stipulation of Dismissal, dated Jan. 8, 2010.)

misappropriation of trade secrets against Defendants as well as common law claims of breach of contract, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment against the Roomorama Defendants.[2] (Compl. ¶¶ 120–222.)

On January 29, 2010, Defendants filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that: (1) Plaintiff's two copyright claims fail because, as to Plaintiff's claim that the Roomorama Defendants used the Poon Source Code without Plaintiff's permission to run the Roomorama website from October 27, 2008 until November 25, 2008, Plaintiff "has not demonstrated and cannot demonstrate through any evidence that there is any protectable expression in the Poon Source Code" and, as to Plaintiff's claim that the Roomorama Defendants and Ngo copied the Poon Source Code, or portions thereof, when creating the Roomorama Source Code, "Poon cannot establish substantial similarity between the Poon Source Code and the Roomorama Source Code"; (2) Plaintiff "failed to identify with any particularity the specific trade secrets which he alleges are contained in the Poon Source Code"; (3) Plaintiff "cannot show damages" from the Roomorama Defendants' alleged breach of the confidentiality agreement; (4) "[a] contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement"; and (5) Plaintiff's claim of breach of the implied covenant of

---

[2]     On November 10, 2009, the Court granted Defendants' motion to dismiss the Complaint with respect to Plaintiff's breach of fiduciary duty claim because "Plaintiff does not allege that Defendants entered into a written contract wherein the parties specifically agreed to a fiduciary relationship," and with respect to Plaintiff's claims of promissory fraud, fraudulent inducement, and fraud because "none of [Plaintiff's fraud] allegations are distinct from those giving rise to the breach of contract claim [or] relate to facts collateral and extraneous to" his alleged contract with the Roomorama Defendants. Poon v. Roomorama, LLC, No. 09 Civ. 3224, 2009 WL 3762115, at *6–11 (S.D.N.Y. Nov. 10, 2009).

2

good faith and fair dealing fails because no "implied-in-fact contract" exists. (Defs.' Mem. of Law in Supp. of Mot. for Summ. J., dated Jan. 29, 2010 ("Mem."), at 7–18.)

On February 11, 2010, Plaintiff filed an opposition arguing, among other things, that: (1) the "Poon[] Source Code is a protectable expression" and "Defendants copied original elements of [P]laintiff's copyright[ed work]" when they created the Roomorama Source Code; (2) "Plaintiff need not identify the individual elements of the [Poon Source Code] that qualify when it is plainly obvious that every element of the [C]ode combined makes up the trade secret"; (3) Plaintiff "need only credibly allege the existence of facts that show damages" to establish a breach of the confidentiality agreement; (4) "[e]ven though a written contract was never formalized, the representations made between the parties created an implied-in-fact contract that was later breached by Defendants"; and (5) "[b]ecause there was an implied-in-fact contract, Defendants' motion" on Plaintiff's claim of breach of the implied covenant of good faith and fair dealing "must be denied." (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., dated Feb. 11, 2009 ("Opp'n"), at 9–20.)

On February 19, 2010, Defendants submitted a reply. (Reply Mem. of Law in Supp. of Defs.' Mot. for Partial Summ. J., dated Feb. 19, 2010 ("Reply").) The parties waived oral argument.

**For the reasons set forth below, Defendants' motion for partial summary judgment is granted in part and denied in part.**

## II.   Background

In the Fall of 2007, Folcia and Teo founded Roomorama, a company that "seeks to match people looking to rent their apartment on a short-term basis with people looking for reasonable accommodations." (Defs.' Rule 56.1 Statement of Undisputed Material Fact in

Supp. of Defs.' Mot. for Partial Summ. J., dated Jan. 29, 2010 ("Defs. 56.1"), ¶¶ 1–4; Pl.'s

Resp. to Defs.' Rule 56.1 Statement of Undisputed Material Facts, dated Feb. 11, 2010 ("Pl.

56.1"), ¶¶ 1–4.)  Plaintiff, an attorney, first met with Folcia and Teo "in late May 2008 [and]

began working on the source code for Roomorama's website in early June 2008." (Defs.

56.1 ¶¶ 34–35, 52; Pl. 56.1 ¶¶ 34–35, 52.)[3]  Plaintiff created the Poon Source Code on

Roomorama's network server and, in developing the Poon Source Code, "used plug-ins and

gems" which Defendants describe as "source code[s] authored by third parties that [are]

publicly available." (See Saenz Decl. Ex. 9 (Dep. of Jia En Teo, dated Nov. 4, 2009 ("Teo

Dep."), at 66:2-16); Defs. 56.1 ¶ 16; Pl. 56.1 ¶ 16; Reply at 2.)

     Plaintiff has not identified which portions, if any, of the Poon Source Code were

authored by him.  (See Defs. 56.1 ¶ 7; Pl. 56.1 ¶ 7; Saenz Decl. Ex. 1 (Dep. of Euwyn Poon,

dated Dec. 19, 2009 ("Poon Dep."), at 304:15-25 ("Q.  Can you identify for me with

specificity the protectable expression in the source code in which you are claiming

copyrights?  A.  I believe that would include the source code itself.  Q.  But within the source

code, which specific expression is protectable versus an expression that is non-protectable for

which [you are] not claiming copyrights?  A.  I don't know how to do that at this time.").)  In

developing the Poon Source Code, Plaintiff used the "Rails framework" which Defendants

contend is a computer program that "allows a developer to use single commands to generate

large portions of code." (Defs. 56.1 ¶ 9 (citing Poon Dep. at 296:8-12 ("Q.  So, rather than

having to write out each line of code yourself, you give a general command, and that

---

[3]     "'Source code' refers to the 'literal text of a [computer] program's instructions written in a particular programming language.'" Computer Assocs. Int'l, Inc. v. Altai, Inc., 22 F.3d 32, 33 n.1 (2d Cir. 1994) (citation omitted); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 533 (6th Cir. 2004) (source code is "the spelled-out program commands that humans can read").

generates a series of lines of code that you can work with, is that right?  A.  That's one part

of it.")).)  Plaintiff contends that this compilation of non-original portions "exhibits at least a

minimal amount of creativity."  (Opp'n at 10.)

Pursuant to a Confidentiality Agreement, dated May 28, 2008 ("Confidentiality

Agreement"), Plaintiff and the Roomorama Defendants agreed that they would "hold in strict

confidence and not disclose to any third party Confidential Information," which the

Agreement defined as, among other things, "ideas, . . . processes, software programs,

software source documents, and formulae related to the current, future, and proposed

products and services of each of the parties."  (Decl. of John Balestriere, dated Feb. 11, 2010

("Balestriere Decl."), Ex. O (Confidentiality Agreement, dated May 28, 2008), ¶¶ 1, 4.)

In consideration for Plaintiff's efforts to develop the Poon Source Code, the

Roomorama Defendants stated that they would grant Plaintiff an equity interest in

Roomorama.  (See Defs. 56.1 ¶¶ 36–39; Pl. 56.1 ¶¶ 36–39; see also Poon Dep. at 132:2-4

("A.  My discussions with [Teo] and [Folcia] only contemplated me staying on the project on

an equity basis."); Balestriere Decl. Ex. B (Dep. of Federico Folcia, dated Nov. 5, 2009

("Folcia Dep.")), at 33:12-13 ("A.  I was willing to make [Plaintiff] a founding member [of

Roomorama].").)  Plaintiff and the Roomorama Defendants did not reach an agreement as to

Plaintiff's equity stake in Roomorama at the time Plaintiff began developing the Poon Source

Code because, as stated in an email sent from Folcia to Plaintiff on June 18, 2008, the

Roomorama Defendants had "identified numerous factors that [they] would have to consider

before granting equity to Poon, including capital raised by the current partners at founding,

time spent conceptualizing, refining and implementing the business structure and level of

ongoing commitment."  (Defs. 56.1 ¶ 38; Pl. 56.1 ¶ 38; see also Decl. of David Saenz, dated

Jan. 29, 2010 ("Saenz Decl."), Ex. 13 (E-mail from Folcia to Poon (June 18, 2008, 14:58 EDT)).)

On August 30, 2008, the Roomorama Defendants "sent Poon a draft of an operating agreement." (Defs. 56.1 ¶ 38; Pl. 56.1 ¶ 38; see also Balestriere Decl. Ex. F.)  On October 26, 2008, Plaintiff sent an email to Folcia and Teo which stated that he was "disappointed [they] haven't been able to work together" and demanded "$100[,000] for an Agreement which would feature a perpetual non-exclusive license to Roomorama" to use the Poon Source Code.  (Balestriere Decl. Ex. I (E-mail from Poon to Folcia and Teo (Oct. 26, 2008, 12:10 EDT)).)  On October 27, 2008, the Roomorama Defendants' relationship with Plaintiff "started breaking down" and, in fact, the Roomorama Defendants and Plaintiff "ceased working together" that same day.  (Teo Dep. at 65:2-11; Defs. 56.1 ¶ 62; Pl. 56.1 ¶ 62.)  On October 28, 2008, the Roomorama Defendants "called [their] server company . . . and changed the password on the account" so that Plaintiff could no longer access it.  (Teo Dep. at 66:3-20.)  "Roomorama [ran] its website using the Poon Source Code from October 28, 2008 until November 25, 2008."  (Defs. 56.1 ¶ 63; Pl. 56.1 ¶ 63.)

On October 29, 2008, Poon obtained a Certificate of Registration for the Poon Source Code from the United States Copyright Office of the Library of Congress ("Copyright Office").  (See Defs. 56.1 ¶ 5; Pl. 56.1 ¶ 5; see also Balestriere Decl. Ex. K.)  Plaintiff states that the Poon Source Code "contains citations to twenty-eight open-source plug-ins; the source code of such plug-ins themselves are not part of the claimed copyright material." (Aff. of Euwyn Poon, dated Feb. 11, 2010 ("Poon Aff."), ¶ 8.)

After receiving notice of Plaintiff's copyright registration on November 4, 2008, the Roomorama Defendants hired Upthought, Inc., "a web developer" ("Upthought"), and

"instructed [it] to create the Roomorama Source Code from scratch without reference to the Poon Source Code." (Defs. 56.1 ¶ 63; Pl. 56.1 ¶ 63; see also Balestriere Decl. Ex. L (Ltr. from Roman R. Fichman to Rosemarie Tully, dated Nov. 4, 2008).) The Roomorama Defendants also hired Ngo "to assist Upthought in creating the Roomorama Source Code." (Defs. 56.1 ¶ 23; Pl. 56.1 ¶ 23.) "Roomorama deleted the Poon Source Code [from their server] in December 2008" and Defendants "never had access to the Poon Source Code thereafter." (Defs. 56.1 ¶¶ 24–25; Pl. 56.1 ¶¶ 24–25.)

While the Roomorama Defendants were replacing the Poon Source Code with the Roomorama Source Code, the Poon Source Code was inadvertently made "publicly available on their website" for an unspecified period of time. (Opp'n at 16; see Defs. 56.1 ¶ 30; Pl. 56.1 ¶ 30.)

## III.    Legal Standard

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285–86 (2d Cir. 2002). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Porto v. Guirgis, 659 F. Supp. 2d 597, 603 (S.D.N.Y. 2009) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). When assessing a compilation for originality, "creativity inheres in making non-obvious choices from among more than a few options." Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 674, 682–83 (2d Cir. 1998). "[A] district court may determine noninfringement as a matter of law on a motion for summary judgment either when the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar." Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986).

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate (1) that it possessed a trade secret, and (2) that the defendant used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43–44 (2d Cir. 1999).

"Courts grant summary judgment dismissing a breach of contract claim where plaintiff has put forth no evidence of damages that are recoverable under New York law." Int'l Gateway Exch., LLC v. Western Union Fin. Servs., Inc., 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004) (citations omitted). "Whether an implied-in-fact contract was formed and, if so, the extent of its terms involve factual issues regarding the intent of the parties and the surrounding circumstances." Watts v. Columbia Artists Mgm't Inc., 591 N.Y.S.2d 234, 236 (App. Div. 1992).

"[A] breach of the implied covenant [of good faith and fair dealing] is not a separate cause of action, but is instead one way of establishing a breach of contract." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007).

## IV.    Analysis

### (1)    Copyright Infringement

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright," Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410(c)), and "shifts the burden to the defendant to demonstrate why the copyright is not valid." eScholar, LLC v. Otis Ed. Sys., Inc., No. 04 Civ. 4051, 2005 WL 2977569, at *8 (S.D.N.Y. Nov. 30, 2005). The party disputing the validity of a copyright "cannot win summary judgment unless there are no disputed issues of material fact with respect to the validity of [the] copyright for the . . . software." Fonar Corp. v. Domenick, 105 F.3d 99, 103 (2d Cir. 1997).

Plaintiff has adduced evidence of a valid ownership of copyright by submitting a Certificate of Registration issued by the Copyright Office, dated October 29, 2008, which all parties agree covers the Poon Source Code. (See Balestriere Decl. Ex. K; see Reply Rule 56.1 Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Partial Summ. J., dated Feb. 19, 2010 ("Pl. Reply 56.1"), ¶ 5; Pl. 56.1 ¶ 5); see Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985).

**Alleged Use of the Poon Source Code from October 27, 2008 to November 25, 2008**

The Roomorama Defendants argue, among other things, that Plaintiff cannot succeed "on his claim for copyright infringement as to [the October 27, 2008 through November 25, 2008] period because he has not demonstrated and cannot demonstrate through any evidence

that there is any protectable expression in the Poon Source Code." (Mot. at 13.)  Plaintiff counters, among other things, that "Poon's Source Code is a protectable expression." (Opp'n at 9.)

The Roomorama Defendants fail to rebut the presumption of validity because there is a dispute of fact as to whether the Poon Source Code contains "portions [that] were his original creation." (Mot. at 10); see eScholar, 2005 WL 2977569, at *14.  While Defendants contend that "Poon's Source Code was pre-fabricated by the Rails web development framework or taken from open sources not authored by Poon," (Mot. at 10), Plaintiff argues that the Rails framework merely "provides a developer with a few empty folders in which to create and place files." (Defs. 56.1 ¶ 10; Pl. 56.1 ¶ 10; Poon Aff. ¶ 7 ("The Rails method of coding tells a programmer to put files that generate what the user sees into an empty folder called 'views,' business logic code in an empty folder called 'models,' and code that handles user clicks and interactions in an empty folder called 'controllers.'").  Neither Plaintiff nor Defendants has introduced adequate facts or expert testimony to support their respective characterizations of the Rails framework.[4]  See Dynamic Microprocessor Assocs. v. EKD Computer Sales, 919 F. Supp. 101, 104–05 (E.D.N.Y. 1996) ("[T]he use of experts is virtually essential to the trier of the facts in examining and evaluating the structural parts of a computer program, of which the source code is a fundamental component.") (citing Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 714–15 (2d Cir. 1992)); see also

---

[4]     In support of his quantum meruit claim, Plaintiff served an expert report written by Logan Lo upon Defendants on December 18, 2009, which was the last day of discovery.  On March 8, 2010, United States Magistrate Judge Frank Maas, to whom this action had been referred for general pretrial purposes, ruled that "[P]laintiff shall be precluded from using the report of Logan Lo LLC at trial" because "the report contains no expert opinions.  Instead, it simply suggests that the expert might be able to provide a valuation [of Plaintiff's services in developing the Poon Source Code] if given more information by the [P]laintiff.  This obviously does not comply with Rule 26." (Order [#58], dated Mar. 8, 2010.)

Matthew Bender & Co., 158 F.3d at 681 ("[T]he question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection [is] a question for the factfinder.").

Even assuming, arguendo, that the Poon Source Code is, as Defendants claim, comprised exclusively of non-original material, summary judgment is inappropriate because "copyright protection attaches to a compilation if the author collected and assembled non-original materials or data, as long as that otherwise unprotected data was 'selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" eScholar, 2005 WL 2977569, at *8 (quoting 17 U.S.C. § 101 (2005)); see also Feist Publ'ns, 499 U.S. at 362; Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 513 (2d Cir. 1991). A dispute of material fact exists as to whether Plaintiff's creation of the Poon Source Code "exhibits at least a minimal amount of creativity." (Opp'n at 10.) Defendants have not introduced adequate facts or expert testimony as to whether Plaintiff developed the Poon Source Code by employing "principles of selection (other than all-inclusiveness)." Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 83 (2d Cir. 2004). Therefore, "it is at least a disputed question of fact whether [Plaintiff's] decisions regarding the selection, coordination, and arrangements . . . transcended the obvious." eScholar, 2005 WL 2977569, at *16 (citation and quotations omitted); see Nicholls v. Tufenkian Import/Export Ventures, Inc., No. 04 Civ. 2110, 2004 WL 1399187, at *2 (S.D.N.Y. June 23, 2004) ("Defendants' argument that the 'Prado' design lacks originality raises factual issues that are best left for trial.").

The Roomorama Defendants also fail to negate the existence of disputed material facts as to whether they "copied" the Poon Source Code from October 27, 2008 to November

25, 2008. "To create a potentially infringing 'copy' within the meaning of the Copyright Act, 17 U.S.C. § 101, 'the work must be embodied in a medium, i.e., placed in a medium such that it can be perceived, reproduced, etc., from that medium . . . and it must remain thus embodied for a period of more than transitory duration . . . .'" SimplexGrinnell LP v. Integrated Systems & Power, Inc., 642 F. Supp. 2d 167, 188–89 (S.D.N.Y. 2009) (quoting Cartoon Network LP v. CSC Holdings, Inc., 536 F.3d 121, 127 (2d Cir. 2008)). "Certainly use [of a copyrighted] source code . . . would violate copyright laws." KnowledgeAZ, Inc. v. Jim Walters Res., Inc., 617 F. Supp. 2d 774, 784 (S.D. Ind. 2008); see also Roeslin v. Dist. of Columbia, 921 F. Supp. 793, 799 (D.D.C. 1995) ("The placement of a copyrighted program into a computer, or the loading of a copyrighted program into a computer (which occurs every time an employee uses the program), constitutes 'copying' the program for purposes of the Copyright Act." (citing MAI Systems Corp. v. Peak Computer Inc., 991 F.2d 511, 519 (9th Cir. 1993); Vault Corp. v. Quaid Software Ltd., 847 F.2d 255, 260 (5th Cir.1988)).

It is undisputed that "Roomorama continued to run the version of its website using the Poon Source Code from October 27, 2008, until November 25, 2008." (Defs. 56.1 ¶ 63; Pl. 56.1 ¶ 63.) Accordingly, the Roomorama Defendants' use and maintenance of the Poon Source Code during this period creates a triable issue of fact as to whether the Roomorama Defendants copied the Poon Source Code. See SimplexGrinnell LP, 642 F. Supp. 2d at 188–89 (finding copying where "each time [a copyrighted computer program] is used, it is loaded into the RAM of a computer, and remains there as long as the programming is being performed").

12

**Alleged Copying of the Poon Source Code in Developing the Roomorama Source Code**

Defendants argue, among other things, that "Poon cannot establish substantial similarity between the Poon Source Code and the Roomorama Source Code." (Mot. at 11.) Plaintiff counters, among other things, that "Defendants copied original elements of [P]laintiff's copyright[ed work]" when they created the Roomorama Source Code. (Opp'n at 9, 11.)

"The plaintiff may prove defendant's copying either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material." Altai, 982 F.2d at 701.

While, as noted, Plaintiff has established prima facie ownership of copyright, Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to whether there is substantial similarity between the Poon Source Code and the Roomorama Source Code. See Walker, 784 F.2d at 48. It is undisputed that "Roomorama instructed Upthought to create the Roomorama Source Code from scratch without reference to the Poon Source Code." (Defs. 56.1 ¶ 20; Pl. 56.1 ¶ 20.) It is also clear that "Poon did not perform a code comparison between the Poon Source Code and Roomorama's new source code to determine whether a substantial similarity exists." (Defs. 56.1 ¶ 18; Pl. 56.1 ¶ 18; see also Poon Dep. at 289:18-21 ("Q. Do you know whether or not the current version of Roomorama's source code contains any of your trade secrets? **A. I do not know for sure.**" (emphasis added)); 304:15-25.) Also, Plaintiff has failed to adduce any evidence as to the composition of the Roomorama Source Code and, therefore, it is impossible to compare the Poon and Roomorama Source Codes. Having failed to identify any protectable design elements

allegedly copied by Defendants, Plaintiff's claim fails. See Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2001) (where plaintiff had "utterly fail[ed] to specify in any objectively identifiable fashion the copyrightable elements of her designs that are capable of existing independently" (citing Celotex, 477 U.S. at 322)); see Gusler v. Fischer, 580 F. Supp. 2d 309, 315–16 (S.D.N.Y. 2008).

**(2)     Alleged Misappropriation of Trade Secrets**

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." N. Atl. Instruments, 188 F.3d at 43–44. "Computer programs have been found to constitute a trade secret where the source code is not easily copied or ascertainable by inspection of the program." LinkCo, 230 F. Supp. 2d at 498; see also Imperial Chem. Ind. Ltd. v. Nat'l Distillers & Chem. Corp., 342 F.2d 737, 742 (2d Cir. 1965) ("a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process and operation of which, in unique combination, affords a competitive advantage and is a protectable secret"); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 664 (4th Cir. 1993).

Defendants' motion for summary judgment on Plaintiff's misappropriation claim is denied as to the Roomorama Defendants. First, there is a disputed issue of fact as to whether Plaintiff possessed a trade secret because Plaintiff has adduced evidence in support of his allegation that the Poon Source Code was and is "not lawfully available to the public . . . , nor can the [Poon Source Code] be discovered or independently developed by any lawful means." (Compl. ¶ 136; see Teo Dep. at 66:6-16 (stating that the Poon Source Code was

14

stored on a password-protected server)); see also Q-Co Ind., Inc. v. Hoffman, 625 F. Supp.

608, 618 (S.D.N.Y. 1985) ("The internal precautions taken by plaintiff to guard

the . . . source code listings have been adequate since the nature of the trade secret is not

ascertainable by inspection of the program."). Second, the public disclosure of the Poon

Source Code on the Roomorama website while the Roomorama Defendants were replacing

the Poon Source Code with the Roomorama Source Code creates an issue as to whether

Defendants "used that trade secret in breach of an agreement." N. Atl. Instruments, 188 F.3d

at 43–44; (see also Confidentiality Agreement ¶¶ 1, 4 (the Roomorama Defendants agree to

"hold in strict confidence and not disclose to any third party . . . processes, software

programs, software source documents, and formulae related to the current, future, and

proposed products and services of each of the parties").)

> At the same time, Defendants' motion for summary judgment with respect to Ngo is

granted because Plaintiff adduces no evidence to establish that Ngo "used [Plaintiff's] trade

secret in breach of an agreement, confidential relationship or duty, or as a result of discovery

by improper means." Haber, 188 F.3d 38 at 43–44. Ngo was not a party to the

Confidentiality Agreement and, more importantly, Plaintiff points to no facts which indicate

that Ngo used the trade secret in any way. (See Confidentiality Agreement; Defs. 56.1 ¶ 24;

Pl. 56.1 ¶ 24.) Plaintiff concedes that Roomorama Defendants hired Ngo "to assist

Upthought in creating the Roomorama Source Code"; that the Roomorama Defendants

"instructed Upthought to create the Roomorama Source Code from scratch without reference

to the Poon Source Code"; and that "Ngo did not copy the Poon Source Code in December

2008 and never had access to the Poon Source Code thereafter." (Defs. 56.1 ¶¶ 20, 23–24;

Pl. 56.1 ¶¶ 20, 23–24.)

**(3)    Contract Claim**

The Roomorama Defendants argue that Poon "admitted that he has made no effort to determine how much he has been damaged [by] any temporary, public availability of the Poon Source Code." (Mem. at 15–16.) Plaintiff counters, among other things, that "Poon need only credibly allege the existence of facts that show damages" by establishing that an unidentified "third party saw the Poon Source Code when it was made publicly available." (Opp'n at 16; Poon Aff. ¶ 12.)

Defendants' motion for summary judgment is granted because "the [P]laintiff failed to provide evidence that any alleged breach resulted in a loss of business, or of a measure of damages 'based upon known reliable factors without undue speculation.'" Diversified Fuel Carriers Corp. v. Coastal Oil N.Y., Inc., 720 N.Y.S.2d 169, 170 (2d Dep't 2001) (quoting Ashland Mgt. v. Janien, 82 N.Y.2d 395, 403 (1993)). At his deposition, Plaintiff testified that he did not know if any third parties "downloaded the [Poon Source Code] while it was exposed"; whether anyone "used the [Poon Source Code] to build a competitive website"; or whether anyone "used the [Poon Source Code] for any purpose." (Poon Dep. at 290:24–291:8.) Accordingly, Plaintiff has not adduced any evidence demonstrating that there were damages as a result of Defendants' alleged breach. See L & L Wings, Inc. v. Marco-Destin, Inc., -- F. Supp. 2d --, No. 07 Civ. 4137, 2009 WL 4884165, at *6 (S.D.N.Y. Dec. 16, 2009); (see Balestriere Decl. ¶ 2 (which contains no evidentiary support for the contention that Poon has been damaged by the Poon Source Code being made publicly available)); Int'l Gateway Exch., 333 F. Supp. 2d at 149 ("Assuming arguendo that [plaintiff] had demonstrated a material breach of contract on Western Union's part, it could not recover unless it quantified

16

and substantiated its allegation of damages sustained as a result of the defendant's breach in specific, non-speculative terms." (citations omitted)).

**(4)    Breach of Implied Contract**

Under New York law, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." Leibowitz v. Cornell Univ., 584 F.3d 487, 506–07 (2d Cir. 2009) (quoting Jemzura v. Jemzura, 330 N.E.2d 414, 420 (N.Y. 1975). "[T]he existence of an implied contract is . . . a question of fact." New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 112 (2d Cir. 2006) (quoting Shapira v. United Med. Serv., Inc., 205 N.E.2d 293 (N.Y. 1965)).

Where, as here, Plaintiff has set forth evidence of his performance of services in developing the Poon Source Code as well as of the Roomorama Defendants' acceptance of such services, Plaintiff has made a showing of the existence of an implied agreement sufficient to constitute a question of fact for the jury. See Paper Corp. of U.S. v. Schoeller Technical Papers, Inc., 773 F. Supp. 632, 641 (S.D.N.Y. 1991); see also Moore-McCormack Lines, Inc. v. Shin Mitsubishi Heavy Ind., Ltd., 337 F. Supp. 513, 516 (S.D.N.Y. 1971) ("the nature of the implied contract . . . , and the validity of any defenses to it, involve questions of fact which must await trial for their resolution"); (Poon Dep. at 132:2-4; Folcia Dep. at 33:12-13; Defs. 56.1 ¶ 35; Pl. 56.1 ¶ 35; Defs. 56.1 ¶ 63; Pl. 56.1 ¶ 63.)

**(5)    Breach of Implied Covenant of Good Faith and Fair Dealing**

"[A] breach of the implied covenant [of good faith and fair dealing] is not a separate cause of action, but is instead one way of establishing a breach of contract." Payday Advance Plus, Inc. v. Findwhat.com, Inc., 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007); see

also Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 639 (S.D.N.Y. 2005) ("A contract implied in fact 'is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.'" (quoting Jemzura v. Jemzura, 36 N.E.2d 414, 420 (N.Y. 1975)).   "Where the plaintiff relies on the same conduct for both causes of action, as is the case here, a cause of action for breach of the implied covenant of good faith and fair dealing is essentially duplicative of a cause of action for breach of implied contract . . . ."   Gard v. Am. Tel. & Tel. Co., 76 F.3d 386, No. 94-55582, 1996 WL 26939, at *3 (9th Cir. Jan. 23, 1996); See Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 75 (2d Cir. 2002) ("under New York law, a claim for breach of the implied covenant is duplicative of a breach of contract claim"); see also Sea Carriers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d 375, 380 (S.D.N.Y. 2007) ("Since a claim for breach of the implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim, it must be dismissed as a matter of law as redundant.").

## V.    Conclusion and Order

For the foregoing reasons, Defendants' motion for partial summary judgment [# 36] is granted in part and denied in part.   The Court dismisses, as to all Defendants, Plaintiff's copyright infringement claim based upon Defendants' alleged copying of the Poon Source Code in developing the Roomorama Source Code as well as Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims.   Plaintiff's misappropriation of trade secrets claim is dismissed as to Ngo.

The parties are directed to appear with their principals at a settlement conference scheduled for June 21, 2010 at 10:00 a.m. in Courtroom 21B of the Daniel Patrick Moynihan

Courthouse, 500 Pearl Street, New York, New York 10007.  **The Court directs the parties
to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated:  June 4, 2010
        New York, New York

                              **RICHARD M. BERMAN, U.S.D.J.**